**F. N. THOMPSON, Incorporated, et al.,**
**Appellants,**

v.

**The FIDELITY & CASUALTY COMPANY OF NEW YORK, and Chase City Construction Company, Incorporated, Appellees.**

**No. 7245.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 12, 1956.

Decided Nov. 7, 1956.

Robert G. Doumar, Norfolk, Va., and Frank A. McCleneghan, Charlotte, N. C. (Venable, Parsons, Kyle & Hylton, Norfolk, Va., and Cochran, McCleneghan & Miller, Charlotte, N. C., on brief), for appellants.

Edward A. Marks, Jr., and Alexander H. Sands, Jr., Richmond, Va. (Sands, Marks, Hening & Sydnor, Richmond, Va., on brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

SOPER, Circuit Judge.

This suit turns on the interpretation of one phase of a government contract for the erection of a large radio transmitting station at Monogram Field, Virginia, which involved the clearing and grading of a considerable area of land. Several contractors, hereinafter called the "Contractor", undertook to do the work as a joint venture for the sum of $2,826,200 and entered into a contract therefor with the United States on October 13, 1952. Shortly thereafter, on October 29, 1952, the Contractor entered into a subcontract under which Chase City Construction Company agreed, for the sum of $56,000 to furnish all the labor, materials and equipment necessary to do a complete job of clearing and grubbing the site according to the specifications of the prime contract.

Chase City furnished the surety bond of the Fidelity and Casualty Company of

New York for the performance of the work but failed to complete the work in accordance with the contract and the Contractor was obliged to do so, and thereupon the present suit for damages was brought against the subcontractor and its surety, which resulted in a verdict for the Contractor in the sum of $710.66.

The Contractor appeals on the ground that the District Judge erred in instructing the jury that the subcontractor was under no obligation to level, grade or restore any of the ground where holes or depressions had been caused by removing tree stumps, etc. in certain areas. The correctness of this ruling is the sole issue in this case.

The subcontractor agreed to do the work in accordance with the terms of the prime contract which was expressly made a part of the subcontract; and particular reference was made to the general clauses of the prime contract and to Section 3, Earthwork, and Addendum No. 4 of the specifications. Standard Specification 4Yd, paragraph 2–02, which was in effect at the date of the invitation for bids, is of importance in this discussion since it is referred to in the specifications with regard to clearing and grubbing. This paragraph provided that the ground should be cleared of all trees, stumps, weeds, brush, rocks or rubbish, and that holes left by the removal of stumps and roots should be refilled with dry earth, thoroughly tamped. Section 3–01, under the caption "Earthwork", provided that the above described Standard Specification 4Yd should govern all the work except as modified or amplified therein. Section 3–03, under the caption "Clearing and Grubbing", also provided that paragraph 2–02 of Standard Specification 4Yd should apply. Section 3–03 however was deleted and Section 3–03 (x) was substituted therefor in an Addendum No. 4, which was added to the prime contract before the subcontract was executed. Section 3–03(x) provided for the clearing and grubbing of the entire site down to ground level and then contained the following specific provisions:

"In roadway and walk areas, grubbing shall conform to specification no. 4Yd. In foundation areas, all roots larger than 3 inches in diameter shall be removed to a depth of 18 inches below such foundations and the excavation for such removal refilled with suitable material as specified elsewhere herein. In other areas, stumps, matted roots and roots larger than 2 inches in diameter shall be removed to a depth of not less than 18 inches below the finished surface".

It will be observed that three areas are delineated in the above quoted portion of Section 3–03(x): (1) roadway and walk areas, (2) foundation areas and (3) other areas. It is not denied that it was the duty of the Contractor, and therefore of the subcontractor who undertook the work of clearing and grubbing, to fill the holes left by the operation in areas (1) and (2), but it is vigorously contended that no such obligation existed with reference to area (3) because no reference to filling the excavations is contained therein.

In our opinion this is a strained interpretation of the contract and should not control the decision of the case. It may be conceded that the quoted portion of Section 3–03(x), taken by itself, is susceptible of the interpretation for which the subcontractor contends, but it becomes unreasonable when the surrounding circumstances are taken into consideration. The purpose of the parties to prepare a suitable cleared site for the government project is manifest in many parts of the contract and no one suggests what purpose would be served by leaving holes and irregularities throughout a large portion of the area prepared for government use. We think that the main purpose of Section 3–03 (x) was to make specific provision for the material to be used in refills in foundation areas and for the depth to which roots of various sizes should be removed as specified in the two last men-

tioned areas, rather than to omit the filling of holes except in roadway, walk and foundation areas.

It should be noted that while there was some conflict on the point there was substantial evidence that the filling of holes left by the removal of trees and stumps was considered by persons experienced in the business as an essential part of a clearing and grubbing operation and was not a grading operation which ordinarily requires a change in the elevation of the ground; and it should be borne in mind that Section 5(a) of the General Clauses of the main contract provided that omissions from the specifications which were manifestly necessary to carry out the intent of the plans or specifications, or which are customarily performed, should not relieve the contractor from performing such omitted details of the work but they should be performed as if fully and correctly set forth.

It is also noteworthy that the meaning of the sections of the contract in issue for which the appellant contends was in accordance with the meaning placed upon them by the Contracting Officer, under whose direction as the representative of the United States all the work under the contract was performed. He was given the authority by the contract to determine all questions in regard to the interpretation thereof. It is contended on the one side that his decision was binding on the parties and, on the other, that the disputed question was not referred to him in such a manner as to make his findings conclusive. We do not find it necessary to decide the point, but base our decision on our interpretation of the specifications as above set out. In our opinion it is not reasonable to conclude that it was the intention of the parties to the main contract, which clearly envisaged the preparation of a suitable site for the government operation, to make no provision for the filling of the holes left by the clearing and grubbing work; and unless this matter was provided for in the sections of the specifications referred to above, it was not covered at all. The Contractor itself had no doubt that the work was required by the contract and accordingly filled the holes when the subcontractor defaulted.

The judgment of the District Court will therefore be reversed and the case remanded for further proceedings.

Reversed.